Mendes Stanley **BROWN**, Petitioner,

v.

Silvia **GARCIA**, Warden, California Correctional Institution at Calipatria, Respondent.

No. C01–3680 TEH.

United States District Court, N.D. California.

Dec. 5, 2002.

**1122**

Thomas Lundy, Santa Rosa, CA.

Gregory A. Ott, Attorney General's Office, San Francisco, CA.

## ORDER

THELTON E. HENDERSON, District Judge.

### INTRODUCTION

Petitioner, Mendes Stanley Brown, has petitioned for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Brown seeks an order vacating his murder conviction and sentence of imprisonment for life without parole on grounds that the selection of the grand jury foreperson violated his equal protection and due process rights under the United States Constitution. Specifically, Brown, an African–American, alleges that his rights were violated because no Chinese–Americans, Filipino–Americans or Hispanic–Americans had served as foreperson of a San Francisco indictment grand jury for the 36–year period from 1960 to 1996. While the length of this period is troubling, the Court concludes,

for the reasons discussed below, that Brown's habeas petition must nonetheless be denied.

### *FACTUAL AND PROCEDURAL BACKGROUND*

On May 11, 1995, a San Francisco grand jury returned an indictment against Brown charging him with first degree murder with use of a firearm and use of a deadly weapon, robbery and burglary with use of a firearm and being an ex-felon in possession of a firearm. Brown sought to quash the indictment based on the grounds that the selection of the grand jury foreperson violated his right to equal protection and due process under the United States Constitution. After ten days of hearings, the trial court denied that motion.

The court ruled that, for equal protection purposes, Brown had established a prima facie showing of discriminatory purpose in the exclusion of Chinese–Americans and Hispanic–Americans from the position of grand jury foreperson. Nonetheless the court found that the presumption of improper purpose had been overcome by the city because its "selection criteria and procedures are racially neutral and do not present an opportunity for discrimination." *People v. Brown,* 75 Cal. App.4th 916, 921, 89 Cal.Rptr.2d 589 (1999).

Similarly, the trial court held that Brown was not denied due process because any discrimination which may have occurred during the selection of the grand jury foreperson was "not so significant" as to impugn the fairness of the process and thereby "undermine the integrity of the indictment." *Id.* Brown subsequently waived his right to a jury trial and was found guilty by the court on all counts and sentenced to life in prison without the possibility of parole. Brown appealed his convictions on the same grounds as his motion to quash. The appellate court affirmed the decision of the trial court.

*Brown,* 75 Cal.App.4th 916, 89 Cal.Rptr.2d 589 (1999).

In its equal protection analysis, the appellate court held that Brown, an African–American, had standing to challenge the exclusion of other cognizable groups (Chinese- and Hispanic–Americans) from the position of grand jury forepersons. *Id.* at 922, 89 Cal.Rptr.2d 589 (*citing Campbell v. Louisiana,* 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998)). The court further found that Brown had made a prima facie showing of discrimination under *Castaneda's* three-prong test. *Id.* at 924, 89 Cal.Rptr.2d 589 (*citing Castaneda v. Partida,* 430 U.S. 482, 494–495, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977)). Specifically, the court found that (1) Hispanic and Chinese–Americans were a cognizable class, (2) the statistical evidence presented demonstrated substantial underrepresentation of Hispanic or Chinese–American grand jury forepersons over 36 years, and (3) Brown "contended that the selection of the foreperson was susceptible of manipulation for a nonracially neutral outcome because the presiding judge makes his or her selection after conducting voir dire of the prospective jurors and thus after having an opportunity to observe the jurors and note their race or ethnicity." *Id.* at 924–925, 89 Cal. Rptr.2d 589.

The appellate court held, however, that the City had successfully rebutted the prima facie case. The appellate court found that the testimony of a nondiscriminatory purpose could be given greater weight because it came not from the selector (the Judge), but from the district attorney and a court executive officer who acted as grand juror advisors. *Id.* at 926, 89 Cal. Rptr.2d 589. Additionally, the court found "relevant that in this case the forepersons were not selected by a single judge using his or her criteria; thus whatever pattern emerged from the aggregate outcome of

all the San Francisco foreperson selections could obscure the variables involved in each discrete selection." *Id.* The court also found relevant that the criteria used to select forepersons were "specific and job related." *Id.*

The appellate court thereafter addressed Brown's due process challenge. The court held that Brown had standing to raise the due process claim. *Id.* at 929, 89 Cal.Rptr.2d 589 (*citing Campbell,* 523 U.S. 392, 401, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998)). Nevertheless, the court found that Brown had failed to show any actual prejudice and denied the claim under a harmless error analysis. *Id.* at 930, 89 Cal.Rptr.2d 589 (*citing People v. Corona,* 211 Cal.App.3d 529, 537, 259 Cal.Rptr. 524 (1989)). Brown's Petition for Writ of Certiorari in the United States Supreme Court was denied. *Brown v. California,* 531 U.S. 830, 121 S.Ct. 82, 148 L.Ed.2d 44 (2000).

## *JURISDICTION AND VENUE*

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254, 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in San Francisco County, California, which is located within this judicial district. 28 U.S.C. 2241(d).

## *STANDARD OF REVIEW*

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Su-

preme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see *Williams (Terry) v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

## *EXHAUSTION*

■ Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings. They must present the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). The parties do not dispute that Brown exhausted the state judicial remedies for the claims raised here.

## *DISCUSSION*

## A. DUE PROCESS

Brown's due process claim is denied because the selection of the California grand jury foreperson did not violate his due process rights. Specifically, no due process violation occurred because the foreperson's duties are ministerial.

### 1. Legal Standard

■ Purposeful discrimination against protected groups in the selection of a federal grand jury foreperson is a violation of the Due Process Clause of the Fifth Amendment. *Hobby v. U.S.,* 468 U.S. 339, 342–46, 104 S.Ct. 3093, 82 L.Ed.2d 260 (1984). In order to establish a violation of a defendant's due process right, it must be determined that (1) the foreperson selection process was discriminatory and (2) the role of the grand jury foreperson exceeds ministerial and clerical duties. *Id.* at 346,

104 S.Ct. 3093. *See also, Campbell,* 523 U.S. at 402, 118 S.Ct. 1419 (1998) (Petitioner must show that the foreperson undertook "significant duties that he would not have had as a regular grand juror").

In *Hobby,* the grand jury foreperson was selected from a random panel to perform strictly ministerial duties and the Court held that "[g]iven the ministerial nature of the position, discrimination in the selection of one person from among the members of a properly constituted grand jury can have little, if indeed any, appreciable effect upon the defendant's due process right to fundamental fairness." *Id.* at 345, 104 S.Ct. 3093. The Court pointed to Federal Rule Of Criminal Procedure 6(c) as an illustration of the clerical nature of the federal grand jury foreperson's role. *Id.* at 344, 104 S.Ct. 3093. The ministerial duties described by Rule 6(c) and considered by the *Hobby* Court were the administration of oaths, maintenance of records and signing of the indictment. *Id.* at 344–345, 104 S.Ct. 3093. The Court further held that these particular duties carry "no special powers or duties that meaningfully affect the rights" of criminal defendants whom the panel indicts. *Id.* at 345, 104 S.Ct. 3093. Moreover, the Court noted that the foreperson has "no authority apart from that of the grand jury as a whole to act in a manner that determines or influences whether an individual is to be prosecuted." *Id.*

The *Hobby* Court noted, however, that the role of the federal grand jury foreperson may significantly differ from the role of the grand jury foreperson appointed by individual states. *Id.* at 342, 104 S.Ct. 3093. For example, the *Hobby* Court compared the duties of the Tennessee grand jury with the duties of the federal grand jury foreperson. In Tennessee, the foreperson does, indeed, have enough responsibility, above and beyond that of the other jurors, that his or her influence is unavoidable and authentic. Specifically, the Tennessee foreperson has "virtual veto power over the indictment process," and is asked to assist the district attorney with investigations, issuance of subpoenas, administration of oaths, and endorsement of every bill. *Hobby,* 468 U.S. 339, 348, 104 S.Ct. 3093, 82 L.Ed.2d 260 (1984) (*citing Rose,* 443 U.S. at 548, n. 2, 99 S.Ct. 2993). Relative to Tennessee, the Court concluded, the duties of a federal grand jury foreperson are "strictly clerical." *Id.* at 349, 104 S.Ct. 3093.

**2. Discussion**

██ Here, Brown was indicted by a California grand jury whose foreperson was selected from the impaneled group of grand jurors. Brown argues that the California grand jury foreperson possesses "real power and influence" and that the foreperson's duties and responsibilities can "substantively affect the work and ultimate determinations of the grand jury" and, thus, are more than ministerial. Pet. for Writ of Habeas Corpus at 22. Despite Brown's claim, there is no indication in the record that such power and influence either existed or were exercised in the proceedings in question. Rather, we conclude that the California grand jury foreperson's duties are similar in nature and impact to that of its federal counterpart.

California law, grand jury guidelines, and the record in this case all show that the duties of the grand jury foreperson in California are constrained in the same manner as the duties of a federal grand jury foreperson. The California statutes that address the role of the grand jury foreperson deal mainly with ministerial and clerical matters including the appointment of jurors and forepersons, § 916 [1], replacement of the foreperson, § 916.1, the

---

1. This and all subsequent statutory references are made to the California Penal Code.

endorsement of the indictment, § 940, and the admonition of witnesses and fellow jurors, § 939.21. These tasks are paraphrased and summarized for grand jurors in The Indictment Grand Jury Handbook, an unofficial guiding document distributed to grand jurors by the district attorney. *Brown*, Notice of Appeal, Exh. B at 7. The duties enumerated by petitioner to support the claim that the foreperson in the instant case possessed real power and influence do not exceed or differ from the tasks and responsibilities conferred upon the grand jury foreperson by the California statutes and the Grand Jury Handbook, nor is any variance illustrated by the record of the proceedings.

In particular, Brown points to the following duties to support his claim that the California grand jury foreperson is imbued with power and authority above and beyond that of the other jurors: 1) calling meetings, 2) presiding at all meetings and directly interacting with the district attorney about crucial matters including witness testimony, exculpatory evidence and jury instructions, 3) acting as official spokesperson, 4) requesting legal advice from the district attorney and/or the presiding judge, 5) assuring that all grand jurors maintain dignity and decorum at all sessions, 6) making determinations as to witnesses' restraint from discussion of testimony and making necessary admonitions, and 7) making joint requests with the prosecuting officer for public sessions. Pet. for Writ of Hab. Corp. at 24. As discussed below, each of these duties is ministerial in nature.

First, calling meetings does not, in and of itself, influence the attendees, especially where the attendees are sworn to issue an indictment based on evidence alone. Both California and federal forepersons preside at meetings of the grand jury panel. The *Hobby* Court held that the duties of the federal foreperson are strictly clerical, which implies that presiding over meetings is a ministerial duty which does not afford the foreperson any additional power. The California foreperson does, in fact, interact directly with the district attorney, but no more than does the federal counterpart. Brown claims that these interactions with the district attorney concern crucial matters including testimony, evidence and instructions. Again, the federal foreperson is also charged with these tasks, and the *Hobby* Court determined that such interaction is not accompanied by any additional power or influence.

The California foreperson's role as spokesperson for the panel parallels the duty of the federal foreperson. Any group whose opinion must be announced needs a designated spokesperson as a means of avoiding chaotic courtroom exchanges. Despite the foreperson's role as spokesperson for the panel, the jurors in the instant case were able to exert their own will. For example, the record reflects an instance in which the foreperson wanted to take a morning recess, but the jurors themselves insisted on moving forward and they communicated this desire directly to the district attorney. *Id.* at 34. That exchange indicates that the panel felt free to disagree with and contradict the foreperson, eliminating the appearance or existence of the foreperson's power and influence.

Brown also notes that the foreperson is expected to request legal advice from the district attorney or the judge, but the record reflects that each impaneled grand juror was free to make any inquiry without the approval, or even prior knowledge, of the foreperson. Reporter's Transcript [hereinafter "RT"] p. 93–94.

Assuring that all fellow jurors maintained dignity and decorum, another enumerated task, is merely a necessary component of presiding over the meetings.

Without the power to sanction or imprison his fellow jurors, the task does not imply that authentic power and influence exist.

Brown also points to the foreperson's duty to make determinations as to witnesses' restraint from discussion and the duty to make admonitions. These tasks are common to the federal grand jury and do not provide any leverage to sway the votes of the other jurors. Even if the California foreperson makes such a determination, the presiding judge may exercise his own discretion above that of the foreperson, thereby subverting the power of that duty. § 939.21. Moreover, the *Hobby* Court held that the task of admonition was ministerial. *Hobby,* 468 U.S. 339, 345, 104 S.Ct. 3093, 82 L.Ed.2d 260 (1984). Further, the record shows that the foreperson deferred to the knowledge and experience of the district attorney by asking whether an admonition was to be delivered to a witness. RT p. 78.

Finally, Brown points to the foreperson's duty to make joint requests with the prosecutor for public sessions. The statute provides that the grand jury itself may make such a request, but such a request must be made through its foreperson. § 939.1. Again, the task is given to the foreperson as a matter of convenience and protocol and is not to be performed without the other jurors' concurrence. *Id.*

While Brown uses the aforementioned tasks to illustrate that the California foreperson has "substantial authority and stature above and beyond that of the other jurors." Pet. for Writ of Hab. Corp. at 24, he fails to illustrate a connection between these tasks and any manifestation of real power or influence over the other jurors. It is necessary for a foreperson to possess some authority such that s/he has the ability to perform the foreperson's expected duties, even if they are ministerial in nature. Such authority and stature are, however, also possessed by the federal foreperson whose duties were held to be clerical and ministerial.

Brown also refers to transcripts of the grand jury proceedings to bolster his claim of influence, but the specified activities and interactions do not lend credence to his claim. Brown notes that Assistant District Attorney Alfred Giannini "repeatedly requests permission of the foreman prior to doing such things as making his opening statement, calling witnesses to the stand or taking breaks, asks the foreman if exhibits may be moved into evidence, and even referred to the foreman as 'your honor.'" *Id.* at 24, n. 20. These requests for permission do not indicate that the foreperson had any actual power or influence over the other grand jurors. Rather, they simply reflect respectful and mannered interaction. For example, Mr. Giannini asked for the foreperson's permission to conclude the presentation of evidence to the jurors. *Id.* The district attorney cannot be expected to seek the permission of each juror in turn before proceeding with the indictment process. It is a procedural necessity that one person speak on behalf of the group. Further, it is clear from the record that Mr. Giannini simply misspoke when he inadvertently referred to the foreperson as "your honor," and he went on to make a joke about "old habits," implying that he included the phrase out of custom and experience, not, as Brown claims, because he intended to imbue the foreperson with power and influence beyond that of the other grand jurors. RT p. 119–20. Overall, the record reflects that the foreperson was deferential to Mr. Giannini even during discussions of adjournment, and appeared unsure of the appropriate procedures. *Id.* at 149. Such a lack of assuredness does not indicate any exercise of power and influence over the other jurors.

In sum, there is no indication in the instant case that the grand jury foreperson possessed any duties beyond the most mundane clerical and ministerial duties. The *Hobby* Court's holding requires that Brown's claim be denied in the absence of any evidence showing that the California grand jury foreperson possessed or exercised any influence or power over the other grand jurors as they weighed the evidence against Brown in consideration of indictment. There is nothing in the record indicating that the foreperson wielded any authentic power or influenced the other jurors. Accordingly and good cause appearing, Petitioner's due process claim is denied.

## B. EQUAL PROTECTION

■ As noted above, Brown, who is African–American, asserts that there was discrimination against Chinese and Hispanic–Americans in the selection of the foreperson of his grand jury. Brown does not address his standing to assert this claim, and thus appears to rely on *Campbell v. Louisiana*, 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998), the case cited to by the California Court of Appeals. In *Campbell*, the Court held that a White defendant in Louisiana had third-party standing to assert an equal protection challenge to discrimination against African–American persons in the selection of grand jurors and the grand jury foreperson. For the reasons explained, below, however, this Court concludes that *Campbell* does not apply to the facts of this case and that petitioner lacks standing to assert an equal protection claim.

In *Campbell*, the Court emphasized that because of the particular procedures used in Louisiana to select grand juror forepersons it would treat Campbell's claim as one alleging discrimination *in the composition of the grand jury* rather than discrimination in the selection of a grand jury foreperson:

As an initial matter, we note Campbell complains about more than discrimination in the selection of his grand jury foreperson; *he alleges that discrimination shaped the composition of the grand jury itself.* In the federal system and in most States which use grand juries, the foreperson is selected from the ranks of the already seated grand jurors. *Under those systems, the title "foreperson" is bestowed on one of the existing grand jurors without any change in the grand jury's composition. In Louisiana, by contrast, the judge selects the foreperson from the grand jury venire before the remaining members of the grand jury have been chosen by lot.* In addition to his other duties, the foreperson of the Louisiana grand jury has the same full voting powers as other grand jury members. As a result, when the Louisiana judge selected the foreperson, he also selected one member of the grand jury outside of the drawing system used to compose the balance of that body. *These considerations require us to treat the case as one alleging discriminatory selection of grand jurors.*

*Campbell*, 523 U.S. at 397–398, 118 S.Ct. 1419 (1998) (citations omitted) (emphasis added). In other words, because the foreperson in Louisiana is chosen from the venire rather than an already-seated grand jury, and because Campbell was alleging discrimination in the selection of the grand jury, the Supreme Court expressly treated Campbell's claim regarding the foreperson as a claim for discrimination in the selection of grand jurors rather than claim for discrimination in the selection of a foreperson. Thus, *Campbell*, by its own terms, is limited to "discriminatory selection of grand jurors," 523 U.S. at 397–98, 118 S.Ct. 1419, and not to the selection of the grand jury foreperson. By contrast, in the present case, the judge selected the

foreperson from already seated jurors and there is no allegation of discrimination in the selection of the grand jurors. *See Brown*, 75 Cal.App.4th at 921–922, 89 Cal. Rptr.2d 589.

*Campbell* again emphasized the above distinction when it discussed the "injury in fact" requirement for third-party standing. There the Court stated: "Regardless of his or her skin color, the accused suffers a significant injury in fact when the *composition of the grand jury* is tainted by racial discrimination." *Campbell*, 523 U.S. at 398, 118 S.Ct. 1419 (emphasis added). As noted above, in the present case, the composition of the grand jury was not affected by the selection of a foreperson from among the seated jurors.

This same distinction is also noted yet again in *Campbell's* discussion of the petitioner's due process claim. There, the Court stated that:

> In *Hobby*, a federal grand jury foreperson was selected from the existing grand jurors, so the decision to pick one grand juror over another, at least arguably, affected the defendant only if the foreperson was given some significant duties that he would not have had as a regular grand juror.... *Campbell's challenge is different in kind and degree because it implicates the impermissible appointment of a member of the grand jury....* "So long as the grand jury itself is properly constituted, there is no risk that the appointment of any one of its members as foreman will distort the overall composition of the array or otherwise taint the operation of the judicial process."

*Campbell*, 523 U.S. at 402–03, 118 S.Ct. 1419 (1998) (*quoting Hobby*, 468 U.S. at 348, 104 S.Ct. 3093) (emphasis added).

Thus while the Supreme Court allowed Campbell to assert third-party standing and pursue his equal protection claim regarding the grand jury foreperson, it took great pains to distinguish its facts from those presented in the case at bar—where the foreperson is selected from a properly constituted grand jury. As such, the Court is not persuaded that *Campbell* is authority for the assertion of third-party standing in this case. In addition, the fact that the foreperson in this case possessed only ministerial duties, as discussed above, substantially undermines any claim of injury-in-fact, a necessary requisite. Indeed, as *Campbell* itself observed, where, as here, the foreperson is selected from the existing grand jurors, the particular foreperson selected only arguably affects the defendant "if the foreperson [is] given some significant duties." *Campbell*, 523 U.S. at 402, 118 S.Ct. 1419. *See also id.* at 402–03, 118 S.Ct. 1419 ("'So long as the grand jury itself is properly constituted, there is no risk that the appointment of any one of its members as foreman will distort the overall composition of the array or otherwise taint the operation of the judicial process'") (*quoting Hobby*, 468 U.S. at 348, 104 S.Ct. 3093). In short, the selection of a foreperson, who holds only ministerial duties, from a properly composed grand jury does not create the type of significant injury-in-fact that *Campbell* requires. *See id.* at 398–99, 118 S.Ct. 1419 (finding that defendant suffers a "significant injury-in-fact" where the composition of the grand jury is tainted by racial discrimination because the grand jury, itself, controls significant decisions, such as whether to indict, how many counts to charge, and whether to charge a greater or lesser offense, including the important decision to charge a capital crime).

Given all of the above, the Court concludes that reliance on *Campbell* to support third-party standing in this matter is misplaced. Nor has petitioner otherwise identified any other basis for standing. Notably, in all of the cases cited by petitioner in his papers the party raising the

equal protection challenge was a member of the group allegedly discriminated against. *See e.g. Rose v. Mitchell,* 443 U.S. 545, 565, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979). Accordingly, the Court concludes that petitioner's equal protection claim must be denied for lack of standing.

## *CONCLUSION*

For the foregoing reasons, the petition for writ of habeas corpus is DENIED. The clerk shall close the file.

**IT IS SO ORDERED.**