**UNITED STATES of America, Plaintiff,**

v.

**Ronald J. PERHOLTZ, et al. Defendants.**

**Crim. No. 85–0255.**

United States District Court, District of Columbia.

Oct. 7, 1985.

On Motion for Permanent Restraining Order Oct. 21, 1985.

Permanent Restraining Order Oct. 21, 1985.

Memorandum And Order Oct. 31, 1985.

Joseph Valder, Brian Murtagh, Asst. U.S. Attys., Washington, D.C., for the U.S.

Leigh Manasevit, Washington, D.C., Steven Schaars, Springfield, Va., for defendant Perholtz.

John F. Conroy, Washington, D.C., for defendant Jackson.

William L. Gardner, William F. Patterson, Washington, D.C., for defendant Fletcher.

Stephen P. Clark, Carol Ann Petren, Washington, D.C., for defendant Dillon.

Edward F. Canfield, Larry S. Gondelman, Thomas R. Dyson, Washington, D.C., for defendant Root.

## MEMORANDUM OPINION AND ORDER

GESELL, District Judge.

The Court has before it the motion of defendant Ronald Perholtz[1] filed on September 13 to set aside a restraining order signed by Chief Judge Robinson on July 30, 1985. The order was obtained by the United States in an ex parte hearing coincident with the filing of the original, sealed indictment in this case pursuant to 18 U.S.C. § 1963(e)(1). A copy of the order is attached. The indictment was unsealed on July 31 and a superceding indictment filed on August 6.

■ Defendant Perholtz maintains that the restraining order must be dissolved because it violates his right to due process and his Sixth Amendment right to retain the counsel of his choice. The Court found that the defendant bore the burden of proof on his contention that the restraining order prejudiced his Sixth Amendment rights. In an effort to meet this burden the defendant presented testimony, exhibits and argument which included an effort to demonstrate that the restraining order is overly broad. In responding to the defendant's Sixth Amendment claim, the United States, without withdrawing its contention that the defendant bore the burden of proof in challenging the scope of the order, presented exhibits, testimony, a detailed exposition of the case against the defendant and argument to show that the properties named in the indictment were likely to be subject to forfeiture. Many of the materials which formed the basis of the United States's presentation were made available to the defendants for inspection several weeks ago. The defendant responded to the United States' legal arguments but did not directly contest any of its representations on what the United States' evidence may show.

Based upon this factual hearing the Court finds by the preponderance of the evidence that the United States has estab-

---

1. Other defendants have filed motions to generally join the motions of their codefendants without specifying which of the 46 motions filed in this case they actually wish to join. The Court understands that none of the defendants except Perholtz and Jackson have any direct interest in the restraining order and are not challenging it, except to record their objection to the attribution of ownership of certain property named in the indictment. This is clearly an issue to be resolved before the jury at trial. Accordingly, the Court's order does not modify the restraining order with respect to any other defendants but Perholtz and Jackson.

lished that the properties listed in the restraining order are likely to be subject to forfeiture ⸱ but that the order is overly broad to the extent it prevents defendant Perholtz from using funds covered by the order for payment of any federal taxes he now owes or may owe while the order is in effect. The Court further finds that when the order is so construed and limited, defendant Perholtz has failed to establish that the order has or is likely to prejudice his Sixth Amendment rights by depriving him of funds necessary for his defense.

The restraining order must nonetheless be vacated. The United States cannot obtain a permanent restraining order that prevents a defendant from disposing of his property by means of an ex parte proceeding. Due process requires that such an order be temporary and the United States must give affected defendants notice of a hearing within a brief amount of time or the ex parte order expires. A ten day limitation on the duration of such ex parte orders seems appropriate. The statute itself provides that ex parte orders obtained before indictment should expire within ten days. 18 U.S.C. § 1963(e)(2). Ten days is also the time period provided to secure the due process rights of civil litigants under Fed.R.Civ.P. 65(b) and numerous courts have held that the same limitation is appropriately imposed on restraining orders under this and parallel criminal forfeiture provisions. *See United States v. Rogers,* 602 F.Supp. 1332, 1342–45 (D.Co.1985) (interpreting 18 U.S.C. § 1963(e)); *United States v. Spilotro,* 680 F.2d 612, 617 (9th Cir.1982) (interpreting pre-1984 provision of 18 U.S.C. § 1963(b)); *United States v. Lewis,* 759 F.2d 1316, 1317 (8th Cir.1985) (interpreting 18 U.S.C. § 848); *United States v. Crozier,* 674 F.2d 1293, 1297 (9th Cir.1982) (same); *United States v. Veon,* 538 F.Supp. 237, 243–49 (E.D.Ca.1982) (same); *see also Criminal Forfeiture and the Necessity for a Post Seizure Hearing: Are CCE and RICO Rackets for the Government?,* 57 St. Johns L.Rev. 776 (1983).

The United States has taken the position that Congress intended for this statute to permit the imposition of a permanent restraining order in an ex parte hearing and the order may only be modified through the defendant's motion for a hearing at which the defendant must bear the burden of proof. The Court cannot accept this view. The legislative history indicates that Congress realized that a subsequent hearing might be necessary after the entry of an ex parte restraining order. S.Rep. No. 98–225, 98th Cong., 2d Sess. 203, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3183, 3386. The constitutional guarantee of a right to be heard on any deprivation of property requires that notice be given and a hearing be held within a brief time after the entry of the ex parte order.

■ Moreover, if the order is challenged it cannot become permanent until the United States has meet the burden of establishing that it is likely that it will be able to convince a jury that the property involved is subject to forfeiture in a hearing in which the defendant has an opportunity to respond, as has been done in this instance. The mere fact of indictment is not enough. The United States must make a prima facie showing that it will be able to prove the elements necessary for forfeiture. The statute prevents such a hearing from becoming a premature trial of the United States' case by permitting the consideration of information which would be inadmissible under the Federal Rules of Evidence. 18 U.S.C. § 1963(e)(3).

It now appears to be well settled that rulings dissolving or granting restraining orders such as this are appealable. *See United States v. Ferrantino,* 738 F.2d 109, 110 (6th Cir.1983); *United States v. Spilotro,* 680 F.2d 612, 615 (9th Cir.1982). Because this ruling involves questions of first impressions the Court will stay its order vacating the restraining order for ten days to enable the United States, if it so desires, to seek review in the Court of Appeals. The stay will also permit defendant Perholtz to cross-appeal the aspects of the Court's ruling and findings which are adverse to him, if he so desires. Clarification of the timing, burden and procedures for

dealing with restraining orders under this new statute is necessary to avoid prejudice to defendants and uncertainty among prosecutors. The modification pertaining to federal taxes shall take effect immediately, however, as the United States does not oppose it.

Accordingly, it is ordered that the restraining order of July 30 is vacated. The order vacating the restraining order is stayed for ten days, during which period the restraining order is modified to permit defendant Perholtz to pay any federal taxes which are now due or become due by having any of the banks holding accounts which are subject to the restraining order issue a certified check payable directly to the United States Treasury.

SO ORDERED.

## APPENDIX

### RESTRAINING ORDER

This matter having come before this Court on motion of the United States of America for a restraining order pursuant to Title 18, United States Code, Section 1963(e)(1) which provides for the jurisdiction of the district courts to enter restraining orders and take such other actions in connection with any property or other interest subject to forfeiture pursuant to Title 18, United States Code, Section 1963; and this Court's inherent power to make orders necessary and proper to the orderly carrying on of litigation brought within the Court's jurisdiction;

IT IS HEREBY ORDERED that the defendants, Ronald J. Perholtz and Franklin W. Jackson, their agents, servants, employees, attorneys, family members, and those persons in active concert or participation with them, be and are hereby enjoined and restrained from selling, assigning, pledging, distributing, giving away, encumbering, or otherwise disposing of, or removing from its present location, with the intent to conceal and hide from the jurisdiction of the Court or removing from any checking or savings account, all or part of their interest, direct or indirect, in the property listed below, real, personal or choses in action, without prior approval of the Court upon written notice to the Attorneys for the United States, whose names appear below,[1] and an opportunity for the United States to be heard, except as specified in this Order.

IT IS FURTHER ORDERED that the property which shall be subject to this Order shall include that listed below, which this court finds that a Grand Jury has determined there is probable cause to believe is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963, and which this Court also finds would be forfeitable to the United States in the event of a conviction pursuant to Counts One or Two of the attached indictment.

| Defendant | Property | Description |
|-----------|----------|-------------|
| PERHOLTZ | $187,654.60 | Royalties—Essex |
| PERHOLTZ | $ 10,000.00 | Consulting Fees—SDC |
| PERHOLTZ | $300,625.00 | Profit Share—PSC |
| PERHOLTZ | $110,000.00 | Promissory Note—PSC |
| PERHOLTZ | $145,811.00 | Consulting Fee—Remote |
| PERHOLTZ | $116,400.00 | Consulting Fee—Honeywell |

The contents of the following bank accounts:

| Bank | Account Number | Account Name | Authorized Signatory |
|------|----------------|--------------|----------------------|
| Maryland National | 75740985 | Ronald J. Perholtz | Ronald J. Perholtz |
| Calvert Group [2] | 001–62851–0–101 | Ronald J. Perholtz | Ronald J. Perholtz |
| Calvert Group | 001–00127488–5 | ATL Corp. | Ronald J. Perholtz |
| Calvert Group | 001–22229401–9 | ATL Corp. | Ronald J. Perholtz |
| Calvert Group | 001–22229402–7 | ATL Corp. | Ronald J. Perholtz |
| Citizens Bank & Trust of Maryland | 0317926 | ATL Corp. | Ronald J. Perholtz |

Defendant Perholtz—a 38-foot pleasure craft, "Mistress," a twin screw vessel, sport-fisher, type, hull number 38 159, Coast Guard Registry No. 548–069.

---

1. Joseph B. Valder; Brian M. Murtagh.

2. Calvert Securities Corporation; Calvert Shareholder Services, Inc.; First Variable Rate Fund.

2. Defendant Jackson—a partnership interest in a condominium, to wit:

Condominium Unit 20–U in Brickell Town House, a Condominium according to and as more particularly described in the Declaration of Condominium thereof, recorded in Official Records Book 10526, at page 650, under Clerk's File No. 79R–273350, in the Public Records of Dade County, Florida, and any amendment; together with a percentage interest in the common elements declared in said Declaration of Condominium to be an appurtenance to said above-described condominium unit which has the address of 2451 Brickell Avenue, Miami, Florida, 33129.

3. Defendant Ronald J. Perholtz's 100% ownership interest in 100 shares of ATL Corporation, a corporation incorporated under the laws of the State of Maryland.

4. Defendant Ronald J. Perholtz's interest in the realty, and any improvements thereon, located at 1620 Chester Mill Road, Silver Spring, Maryland, the corporate address for ATL Corporation, more particularly described as Lot numbered Fifty-five (55), in Block numbered Four (4), in the subdivision known as "Plat 1, Norwood Village" as per plat thereof recorded among the Land Records of Montgomery County, Maryland, in Plat Book 90 at Plat 9661.

5. All of defendant Ronald J. Perholtz's rights in all patents, copyrights and licensing agreements pertaining to the ATAP software which the United States Postal Service uses in its automatic timekeeping and attendance system.

SO ORDERED this 30th day of July, 1985.

/s/ Aubrey E. Robinson
CHIEF JUDGE

## ON MOTION FOR PERMANENT RESTRAINING ORDER

The Court is once again confronted with construing a new, largely uninterpreted statute that authorizes pretrial restraining orders against the potentially forfeitable property of RICO defendants without describing the procedures or substantive standards courts should apply in granting such orders. On October 7, after an evidentiary hearing, briefing and oral argument, the Court vacated a permanent restraining order obtained under this provision in an ex parte hearing because it violated due process. The Court stayed its order vacating the restraining order to allow either side to appeal because novel issues of law were involved. Neither side has chosen to do so. Instead, the United States has moved for a permanent restraining order based on the evidence presented during the hearing on the ex parte order. Defendant Perholtz opposes the United States' motion but has indicated that he does not wish to present any additional evidence. After briefing and full opportunity for argument by the United States and defendant Perholtz, the Court makes the following rulings.

■ Last year Congress amended the RICO statute to prove that "Upon application of the United States the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond or take any other action to preserve the availability or [forfeitable] property ... upon the filing of an indictment or information" charging a RICO riolation and identifying property that may be subject to forfeiture after conviction. 18 U.S.C. § 1963(e)(1)(A). The Court has already held that due process requires that the statute be interpreted to require notice and a hearing before any permanent order lasting more than ten days may be entered. However, the Court rejects defendant's argument that the ex parte order previously obtained by the United States precludes the Court from ever granting a restraining order after a hearing that satisfies due process. The remedy for the initial violation of due process is to hold the requisite hearing, as has been done in this instance. The fact that the United States, acting on a good faith interpretation of a new statute, obtained an ex parte order that purported to be permanent, does not forever disable the United States from obtaining the permanent restraining order Congress autho-

rized if it provides notice and meets its burden in a hearing.

The statute is silent on what burden the United States must meet in applying for a post-indictment restraining order. In defining this burden the Court is guided, but not controlled, by the standards set out in the statute for pre-indictment restraining orders and the analogous requirements for a obtaining preliminary injunction. 18 U.S.C. § 1963(e)(1)(B); *Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977).

Initially, the United States must show that there is a substantial likelihood that it will be able to convince a jury that the property involved is subject to forfeiture. Meeting this burden requires proof that the United States is likely to prevail on the issue of guilt on the RICO violation charged and proof that the property to be restrained is likely to be forfeitable under § 1963(a). The Court found that the United States met this burden by a preponderance of the evidence in the previous factual hearing. Defendant Perholtz has not presented any further evidence or arguments to sway the Court from this finding. Although the grand jury's finding of probable cause in returning the indictment may not always be sufficient to meet this burden, the defendants have not been able to show any irregularities in the lengthy grand jury proceedings to lead the Court to question its finding. Moreover, the indictment taken together with the affidavits, testimony, documents and exposition of the United States' case, presented from charts based on documents that have been available to the defendants for some time satisfy the Court that the United States has meet its burden in this instance. Much of the proof presented at the evidentiary hearing will not be admissible in that form at trial, but the statute specifically provides that such hearings are not bound by the Federal Rules of Evidence in order to prevent hearings on restraining orders from becoming premature criminal trials.

The Court rules that to obtain a restraining order pending the outcome of the trial, the United States must also show a substantial likelihood (1) that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court or otherwise made unavailable for forfeiture and (2) that the need to preserve the availability of the property outweighs the hardship that the order may impose on the party against whom the order is entered. *Cf.* 18 U.S.C. § 1963(e)(1)(B). The Court has already found, based on the previous evidentiary hearing, that the order, as modified to permit payment of federal taxes, does not impose any substantial hardship on defendant Perholtz. However, the United States has not in all respects provided persuasive evidence to meet its burden or showing that defendant Perholtz will conceal, destroy or otherwise disapate the property to evade forfeiture if a restraining order is not entered. Nevertheless, given the clear evidence in this case of use of manipulative devices to mask the origin and nature of transactions, there is an inherent risk that Perholtz's cash and liquid assets will be removed from the jurisdiction of the Court if no restraining order is entered. Therefore, the Court finds that in a case such as this, where the underlying offense charged involves fraudulent and manipulative transactions, the United States is entitled to a presumption that negotiable and liquid assets may be made unavailable for forfeiture if not restrained, but it must make a more specific evidentiary showing with respect to non-negotiable assets and real estate. That showing is lacking. Consequently, the Court will enter a restraining order only against the defendants' readily negotiable and liquid assets, which in this case include bank accounts, contractual rights to payment, and patent, copyright and licensing rights, and will not restrain the defendants' use of real property that may be subject to forfeiture.[1]

---

1. The United States' motion also seeks to restrain the interest of defendant Jackson in a

condominium. Since the United States has not presented any evidence to meet its burden of

Defendant Perholtz has orally requested that the Court modify the order to permit him to pay state and local taxes and to move funds between accounts to facilitate the payment of federal taxes. The Court will not modify the order to permit payment of other than federal taxes since the defendant has not made a showing of hardship and permitting these payments may deprive the United States Treasury of funds that it will be entitled to by way of forfeiture. The Court will modify the order to permit defendant Perholtz to shift funds between the restrained accounts by certified check payable directly to the bank holding the account to which the funds are to be transfered.

An appropriate order is entered contemporaneously with the filing of this memorandum.

## PERMANENT RESTRAINING ORDER

For the reasons given in a memorandum accompanying this order the Court grants, in part, the motion of the United States for a restraining order pursuant to 18 U.S.C. § 1963(e)(1) after a hearing at which the defendants were given an opportunity to be heard and to present evidence.

Accordingly, it is ordered that the defendant, Ronald J. Perholtz and his agents, servants, employees, attorneys, family members, and those persons in active concert or participation with him, be and are hereby enjoined and restrained from selling assigning, pledging, distributing, giving way, encumbering, or otherwise making unavailable for forfeiture, all or part of their interest, direct or indirect, in the property listed below, without prior approval of the Court upon a showing of good cause. Provided however, that the defendant Perholtz is permitted to pay any federal taxes which are now due or may become due by having any of the banks holding accounts which are subject to the restraining order issue a certified check payable directly to the United States Treasury. Provided further, that that the defendant Perholtz may transfer funds from one restrained account to another by certified check payable directly to the bank holding the account into which the funds are to be transfered.

1. (a) 

| Property | Description |
| --- | --- |
| $ 187,654.60 | Royalties—Essex |
| $ 10,000.00 | Consulting Fees—SDC |
| $ 300,625.00 | Profit Share—PSC |
| $ 110,000.00 | Promissory Note—PSC |
| $ 145,811.00 | Consulting Fee—Remote |
| $ 116,400.00 | Consulting Fee—Honeywell |

(b) The contents of the following bank accounts:

| Bank | Account Number | Account Name | Authorized Signatory |
| --- | --- | --- | --- |
| Maryland National | 75740985 | Ronald J. Perholtz | Ronald J. Perholtz |
| Calvert Group | 001–62851–0–101 | Ronald J. Perholtz | Ronald J. Perholtz |
| Calvert Group | 001–00127488–5 | ATL Corp. | Ronald J. Perholtz |
| Calvert Group | 001–22229401–9 | ATL Corp. | Ronald J. Perholtz |
| Calvert Group | 001–22229402–7 | ATL Corp. | Ronald J. Perholtz |
| Citizens Bank & Trust of Maryland | 0317926 | ATL Corp. | Ronald J. Perholtz |

showing that the property is likely to be unavailable in the absence of a restraining order, the Court will not included this property in the order.

2. Defendant Ronald J. Perholtz's 100% ownership interest in 100 shares of ATL Corporation, a corporation incorporated under the laws of the State of Maryland.

3. All of defendant Ronald J. Perholtz's rights in all patents, copyrights and licensing agreements pertaining to the ATAP software which the United States Postal Service uses in its automatic timekeeping and attendance system.

---

SO ORDERED.

## MEMORANDUM AND ORDER

The Court has before it the motion of the United States for an Order Permitting the Foreman of the Grand Jury to Affix His Signature to the Superseding Indictment in this Case, Nunc Pro Tunc, the Motion of defendant Dillon to Dismiss the Indictment and the Motion of defendant Jackson to withdraw his plea. The other defendants joined in the Dillon and Jackson motions at the oral argument, following which, as then agreed, the Court was furnished additional grand jury records pertinent to the question presented. The motion of the United States is granted for reasons stated herein.

The original indictment in this case was returned on July 30 and was signed by the grand jury foreman and with the name of the United States Attorney, affixed by the head of the Grand Jury section of the Criminal Division. The superseding indictment was returned by the same grand jury on August 6 and signed with the name of the United States Attorney, affixed by the Chief of the Criminal Division, but was not signed by the foreman of the grand jury. The grand jury term expired before the United States discovered the absence of the foreman's signature. Promptly after discovering the lack of signature the United States sought an order permitting the foreman to sign belatedly. Although the United States represented that the failure to sign was inadvertant, the Court directed that all defendants be informed and an expedited hearing be held because of the significance of the motion to the validity of an outstanding restraining order and the progress of this case.

The Court has examined the attendance records for the grand jury, the grand jury polling sheets which were signed by the grand jury foreman at the time that each indictment in this case was returned, the transcript of the presentation of the original and superseding indictment to the grand jury, the notes of the proceedings on the indictment in the grand jury log, and the transcript of the grand jury's return of the superseding indictment before a magistrate of this Court on August 6. In addition, the foreman of the grand jury testified and was cross-examined by the defendants.

The foreman's failure to sign was a purely clerical error due to inadvertance. The polling sheet of the grand jury vote on August 6, signed by the foreman, attests to the fact that the grand jury returned a true bill and confirms the foreman's testimony that he intended to sign the indictment and believed he had signed it. The superseding indictment was presented to the magistrate by the full grand jury and specifically referred to in the course of that proceeding. The failure of the foreman to affix his signature was merely an oversight; the contemporaneous records do not permit any other conclusion.

The records also make clear that the superseding indictment was voted by more than twelve ordinary citizens after the actual terms of the indictment 'were fully presented to them. *Gaither v. United States*, 413 F.2d 1061, 1066–71 (D.C.Cir. 1969). The grand jury that returned these indictments was comprised of 21 jurors. The transcript of the grand jury proceedings, polling sheet and log notes show that on July 26 the original indictment was read in its entirety to 17 members of the grand

jury, all of whom voted to concur in returning the indictment, and the indictment was returned on July 30. The contemporaneous attendance records show that on August 6, twenty grand jury members were present when the United States Attorney presented the changes made in the superseding indictment to the grand jury in writing, and thoroughly described the changes orally. Nineteen members of this jury panel voted to return the indictment. Although the attendance records are not detailed enough to indicate which grand jurors voted, they establish that at least 15 of the grand jurors who concurred in returning the superseding indictment were present when the actual contents of the original and superseding indictment were given to the grand jury.

■ There is no federal rule or statute requiring that an indictment bear the signature of the grand jury foreman in order to be valid. Fed.R.Crim.P. 6(c) merely designates the grand jury foreman as the individual who is to attest to the action of the grand jury by affixing his signature. This task is merely clerical and ministerial in nature and does not confer any special powers upon the foreman or create any special significance to the foreman's signing an indictment that has been validly returned by the grand jury. Consequently, the foreman's duty to sign the indictment is a formality and the absence of the foreman's signature on an indictment properly voted by the grand jury is a mere technical irregularity. *Hobby v. United States,* — U.S. ——, 104 S.Ct. 3093, 3096–97, 82 L.Ed.2d 260 (1984); *Frisbie v. United States,* 157 U.S. 160, 163–65, 15 S.Ct. 586, 587–88, 39 L.Ed. 657 (1895).

■ The superseding indictment was also properly "signed by the attorney for the government" in accordance with Fed.R. Crim.P. 7(c). The Chief of the Criminal Division, by the regular policy and practice in the United States Attorneys Office has been and is authorized to sign the name of the United States Attorney, followed by his initials, as was done here. More formality in this obvious delegation might be desirable, but its absence clearly does not make the indictment defective. The signature of the attorney for the government merely attests to the authenticity of the indictment and the prosecutor's concurrence in its return. An authorized assistant may sign the United States Attorney's name and technical challenges to the signature on a valid indictment do not make the indictment defective. *See United States v. Walls,* 577 F.2d 690, 696 (9th Cir.1978) *cert. denied,* 439 U.S. 893 (1979); *Little v. United States,* 524 F.2d 335, 336 (8th Cir.1975), *cert. denied,* 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 326 (1976); *United States v. Wright,* 365 F.2d 135, 137 (7th Cir.1966), *cert. denied,* 386 U.S. 918, 87 S.Ct. 879, 17 L.Ed.2d 789 (1967); *Abramson v. United States,* 326 F.2d 565, 567 (5th Cir.1964), *cert. denied,* 377 U.S. 957, 84 S.Ct. 1636, 12 L.Ed.2d 500 (1964); *see also* Annotation, 5 A.L.R.Fed. 922 (1970 & 1985 Supp.).

Accordingly, the Court directs that the Clerk of Court permit the foreman of the grand jury to sign the original of the superseding indictment forthwith, as if it had been signed at the time it was returned on August 6 to cure the ministerial defect resulting from his inadvertent failure to sign.

SO ORDERED.