UNITED STATES of America

v.

Steven F. MADEOY, Jakey Madeoy, Michael J. Friedman.

Crim. No. 86–0377.

United States District Court, District of Columbia.

Jan. 16, 1987.

Donald J. Allison, Steven C. Tabackman, Asst. U.S. Attys., Washington, D.C., for Government.

Kenneth M. Robinson, Washington, D.C., for defendant Steven F. Madeoy.

William J. Garber, Wasnington, D.C., for defendant Jakey Madeoy.

John W. Vardaman, Jr., Williams & Connolly, Washington, D.C., for defendant Michael J. Friedman.

MEMORANDUM

HAROLD H. GREENE, District Judge.

I

*Vagueness and Particulars*

The defendants[1] have moved to dismiss counts one through fifty-three and seventy-six through ninety-eight of this 121 count indictment charging conspiracy and fraud on the ground that these counts are impermissibly vague. Defendant Jakey Madeoy also has moved to dismiss counts fifty-four through seventy-five on the same ground. In addition, relying on Rule 7(f) of the Federal Rules of Criminal Procedure, the defendants have moved the Court for an order to the government for a bill of particulars. For the reasons stated below, the motion to dismiss for vagueness will be denied; the motion for a bill of particulars will be granted in part and denied in part.

While the indictment in this case is certainly lengthy, it is not vague. In fact, the indictment specifically provides the defendants with all the information they require. For example, in paragraph 17, the indictment details the way in which the "buyer credit scheme" was devised by defendant Steven F. Madeoy and Richard Gaylen, and it likewise details the scheme's execution. In this same paragraph, the indictment connects these actions to twenty-three specified properties bought and sold by Madeoy, and it describes the roles played by particular defendants and co-conspirators. Elsewhere, the indictment states that Jakey Madeoy submitted to the Veterans Administration false, fraudulent, "and inflated" residential appraisal reports for the properties in question. This charge of inflation of the appraisal reports belies defendants' assertion that they are not informed of the manner in which various documents were false and fraudulent.

An indictment is sufficient if it contains the elements of the offense, fairly informs the defendant of the charge against which he must defend, and enables him to plead an acquittal or conviction in bar of future prosecutions. *E.g., Hamling v. United States*, 418 U.S. 87, 117–18, 94 S.Ct. 2887, 2907–08, 41 L.Ed.2d 590 (1974). In the context of this wide-ranging but otherwise rather uncomplicated scheme, the Court has no difficulty in finding that the indictment meets this test. Thus, the motion to dismiss for vagueness will be denied.

As both sides realize, a motion for a bill of particulars is addressed to the discretion of the Court. *See United States v. Pollack*, 534 F.2d 964, 970 (D.C.Cir.1976). Such a motion ordinarily is not granted unless the requested particularization is necessary to a defendant's preparation for trial and the avoidance of unfair surprise at trial. *See United States v. Kendall*, 665 F.2d 126 (7th Cir.1982). In the main part, and for reasons similar to those discussed above on the vagueness question, the Court again has no difficulty in deciding that a bill of particulars is unnecessary to defendants' ability to meet the government's charges. Consequently, the motion for a bill of particulars will be denied in most respects.

That motion will be granted, however, insofar as the indictment charges that defendants violated certain unspecified laws and regulations of the United States. For example, count one refers to more than 700 pages of the Code of Federal Regulations without specifying which regulations are at issue. There is no reason whatever why these laws and regulations should not be specified by way of a bill of particulars—a specification which may well be vital to defendants' abilities to answer these charges. The Court will accordingly grant the motion for a bill of particulars to the extent that it requests information concerning the applicable laws and regulations.

---

1. All three defendants have filed motions to dismiss for vagueness.

## II
### Pretrial Discovery

■ Two of the defendants[2] have made a number of requests for pretrial discovery. Before dealing with the specific requests, it is to be noted that the prosecution appears to have been quite forthcoming with informal discovery. For example, it has made available to defendants a copy of the FBI Form 302 memorializing a special agent's oral conversation with defendant Friedman and his wife, Rhona M. Friedman; a copy of defendant Friedman's testimony before the grand jury on September 4, 1985, January 5, 1986, and August 13, 1986; and much other documentary and tangible evidence in its possession. This cooperative attitude provides some context for the present discovery requests although, of course, it would not justify the denial of defense requests that are otherwise justified.

### A. Oral Statements to Third Parties

■ The majority view, and that adopted by the Court of Appeals for this Circuit in *United States v. Pollack*, 534 F.2d 964, 976 (D.C.Cir.), is that oral statements made by a defendant to third parties which the government intends to offer in its case in chief against a defendant are not discoverable under Fed.R.Crim.P. 16. In accordance with the decision in the *Pollack* case, the motion for discovery will be denied with respect to these statements.

### B. Statements of Co-Conspirators

Defendants seek pretrial discovery of all statements of co-conspirators or, at a minimum, the statements of those co-conspirators whom the government does not intend to call as witnesses at trial.

■ It is clear that defendants are not entitled at this time to the discovery of statements of co-conspirators who will testify at the trial, *see United States v. Percevault*, 490 F.2d 126 (2d Cir.1976); *Sendejar v. United States*, 428 F.2d 1040 (9th Cir. 1970), and the Court will accordingly deny the motion in that respect.

■ On the other hand, it is also relatively well established that statements of co-conspirators whom the government does not intend to call as witnesses at trial are discoverable in advance under Fed.R. Crim.P. 16. *See United States v. Jackson*, 757 F.2d 1486, 1491 (4th Cir.); *United States v. Turkish*, 458 F.Supp. 874, 882 (S.D.N.Y.1978); *United States v. McMillen*, 489 F.2d 229, 231 (7th Cir.1972); *see also* 2 C. Wright, *Federal Practice and Procedure: Criminal* 2d § 253, at 50 (1982). However, the discovery of these statements is limited to those that would be discoverable under Rule 16 if they had been made by the defendant himself: written or recorded statements and oral statements made in response to interrogation. *See Jackson*, 757 F.2d at 1491; *Turkish*, 458 F.Supp. at 882. It is accordingly only such statements that will be required to be disclosed.

### C. Witness List

■ The Court has discretion, upon a showing of compelling need, to grant a motion for discovery of the government's witness list. *See United States v. Anderson*, 481 F.2d 685, 693 (4th Cir.), *aff'd*, 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1973); *United States v. Price*, 448 F.Supp. 503, 507–18 (D.Colo.1978). Defendants assert that they have established a compelling need for the witness list, on the ground that there are seventy potential witnesses in this case and thousands of documents to be reviewed, and that adequate preparation is impossible without an advance witness list.

■ Preparation for trial, effective cross-examination, expediency of trial, possible intimidation of witnesses, and the intrinsic reasonableness of the request are among the factors a court may consider in deciding whether to exercise its discretion to allow discovery of the witness list. *See United States v. Opager*, 589 F.2d 799, 804 (5th Cir.1979); *United States v. Sclamo*, 578 F.2d 888, 890 (1st Cir.1978); *United*

---

**2.** Defendant Steven Madeoy has requested that the arguments made by defendant Friedman in this motion also be applied to him, and the Court will consider the issues on that basis.

*States v. Cannone,* 528 F.2d 296, 302 (2d Cir.1975). Several rules may be said to apply. Mere conclusory statements that the list is necessary for preparation of trial is not sufficient. *Cannone,* 528 F.2d at 302–02. On the other hand, where requests for discovery of the government's witness list have been denied outright, it has usually been done on the basis of prior witness intimidation.

■ In view of the very large number of witnesses and documents involved in this case, the intrinsic reasonableness of the request, and the extreme lack of likelihood of witness intimidation, the Court concludes that defendants have established a compelling need for the government's witness list. It is to be expected that production of the list will simplify the administration of a complex trial without causing prejudice to the prosecution or its witnesses.

#### D.  *Computer Readable Information*

■ Rather cursorily, defendants request discovery of computer disks or tapes that contain information about this case. To the extent that such computer disks or tapes are substitutes for information contained in documents, the government has already produced to the defendants all the materials to which they are entitled under Fed.R.Crim.P. 16(a)(1)(C). Any other information that the government has stored on computer disks or tapes would appear to be work product, and it is therefore not discoverable.

### III

#### *Living Expenses and Taxes*

Defendant Friedman requests that the Court modify the November 5, 1986 restraining order issued in this case to permit him to use for living expenses the $26,250 identified in that order as representing the return of a purchase deposit paid on real property. While counsel for the prosecution initially did not oppose that request but agreed to consider it, they subsequently expressed their opposition orally and in writing. The prosecution's ultimate position was to consent to defendant's request provided that the $26,250 were replaced by a government claim on defendant's home. The prosecutors also requested that, should the Court rule against them, it grant a stay pending appeal.

#### A.  *Living Expenses*

There is no question that defendant is entitled to release of the amount requested for living expenses. In addition to memoranda specifying the need for such amounts through March 1987, when the trial is due to end, defendant has filed two affidavits, each more specific than the other, providing clear breakdowns of his living and occupational expenses (*e.g.,* mortgage payments on family home, office rent and payroll)—breakdowns that the government has not attempted to contradict. Instead, the prosecution has simply requested that the Court reject the affidavits, and instead require defendant to testify under oath concerning these matters.

■ The Court sees no basis for such a procedure. Not only are the affidavits precise and comprehensive, but the expenses claimed are intrinsically reasonable. Additionally, to require defendant to testify under oath in advance of the trial is to risk an invasion of his constitutional rights which may well jeopardize his ability to receive a fair trial.

■ There is likewise no merit to the prosecution's assertion that it is entitled to a claim to defendant's home equivalent in value to the monies released to him for his living expenses. The trial court has of course discretion to exempt from any freeze order assets sufficient to pay the defendant's reasonable living expenses pending disposition of the criminal charges. *See, e.g., United States v. Thier,* 801 F.2d 1463, 1471 (5th Cir.1986); *United States v. Perholtz,* 622 F.Supp. 1253, 1259–60 (D.D. C.1985). In exercising its discretion, the Court must balance the defendant's interest in having access to funds needed to pay such expenses against the government's

interest in preventing the depletion of potentially forfeitable assets. *Thier*, 801 F.2d at 1474. However, there is no support in the statute, the legislative history, or the decided cases for the proposition that, as a prerequisite to being afforded the ability to use some of his own monies to provide food, shelter, and the like, for himself and his family, a defendant is required, in effect, to mortgage his home to the government. No court appears to have held that the substitution of unfrozen assets is a prerequisite to the release of frozen assets for necessary expenses, and the proposition makes no sense.

The prosecution appears to proceed on the basis of the assumption that it is entitled to forfeiture of defendant's assets—an assumption that would be justified only after a conviction, not at a time when the defendant's guilt or innocence is yet to be decided, and he still enjoys the presumption of innocence.[3]

■ In short, the balance of the competing considerations set forth above weighs heavily in favor of unfreezing the $26,250 for the purpose of allowing defendant Friedman to pay his ordinary and necessary living expenses.

It might also be noted that the $26,250 represents less than two percent of defendant's total frozen assets. Thus, should the prosecution be successful in proving defendant guilty beyond a reasonable doubt, almost all of his present assets will still be available for forfeiture. But the Court will not require defendant to mortgage his home in order to have access to funds for living expenses to which he is plainly entitled.

### B. *Taxes*

■ Defendant Friedman also requests that the Court modify the November 5, 1986 restraining order to permit him to expend funds from his savings account to the extent necessary for payment of federal and Maryland income taxes due in January 1987. With respect to the payment of federal income taxes, the Court agrees with the *Perholtz* decision that sufficient assets to allow a defendant to pay his federal income taxes may be unfrozen. 622 F.Supp. at 1260. On this basis, defendant's motion to unfreeze sufficient assets for payment of his federal income taxes will be granted.

■ The court in *Perholtz* did not authorize the unfreezing of monies for the payment of state taxes, indicating that this may be done only upon a showing of hardship. In the view of this Court, a showing of hardship is probably not necessary under the law but, in any event, whatever test is applied, defendant is entitled to the release of funds sufficient to pay the Maryland taxes now due. There is no indication that defendant has any unfrozen, liquid assets beyond the $26,250 herewith unfrozen for living expenses. It follows that denial of his motion to unfreeze sufficient assets for payment of his Maryland state income tax would cause Friedman to default on that tax. Since the defendant is obligated to pay that tax, just as he is obligated to pay federal taxes, to require him to default would effect a nonsensical result, if only because it would require him to violate the laws of the State of Maryland. A criminal defendant should not be unduly hindered in fulfilling his just governmental obligations while trial is pending.[4]

---

**3.** In their opposition to defendant's motion, the prosecutors refer repeatedly to the right of the government not to "forego money due it by forfeiture of ill-gotten gains ..." (Opposition at 6). There has been no forfeiture because it still remains to be established that defendant's gains were ill-gotten. As Judge Rubin, concurring in the opinion of the Court of Appeals for the Fifth Circuit said in *Thier*, 801 F.2d at 1476, the judicial conscience is shocked by a procedure which would leave an accused without means of support for food, housing and the like, solely on the basis of a prosecutorial accusation and affidavit.

**4.** The alternative to defendant's failure to pay the tax might be the sale or further mortgage of his home. There is no indication that Congress had so drastic a consequence in mind *in advance of trial and any finding of guilt.*

### C. *Stay*

■ As indicated, the prosecutors have requested a stay pending appeal. That request will be denied. First, there appears to be no appealable order, since the element of finality is lacking. No decision of any court has been cited to this Court that an order of the kind here involved is sufficiently independent of the main cause of action that it is appealable notwithstanding its lack of finality. *Compare Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Second, the type of decision that is here involved is one that, of necessity, is entrusted to the discretion of this Court, and an appeal (or a writ of mandamus) would therefore be unlikely to succeed on the merits for that reason alone. Third, to grant a stay to the prosecution pending resolution of any appeal would be tantamount to a deprivation of necessary living expenses to this defendant between the present and the conclusion of the trial. To put it another way, the grant of a stay—given the delays necessarily inherent in the appellate process—would be a denial by this Court by its left hand of the relief that it had just granted with its right. The request for a stay will accordingly be denied.

### IV

### *Surveillance, Mail Cover, Grand Jury*

Defendants[5] request that the prosecution inform them whether any evidence in its possession was obtained through any form of surveillance or mail cover, and they request a description of such evidence. They further request to be informed whether any unauthorized persons were in the grand jury room and whether any grand jury testimony was left unrecorded. The prosecutors have stated in open court that they are not aware of any electronic surveillance of defendants, that they have not obtained any evidence from surveillance or mail covers, that no unauthorized persons were in the grand jury room, and that no grand jury testimony was left unrecorded. In the absence of any evidence that these representations are incorrect, the motion must and will be denied.

### V

### *Conspiracy and RICO Counts*

Defendants[6] claim that Count One, conspiracy, and Count Two, criminal RICO, are mutually exclusive, and that the Court must therefore dismiss one of the two counts or, in the alternative, compel the government to elect between them. Basically, it is defendants' theory that a single conspiracy or scheme to defraud, as stated in the indictment, cannot also constitute the requisite "pattern of racketeering activity" for a RICO violation.

The law on this issue is not entirely clear. The Supreme Court has not squarely decided the issue of whether a single scheme also may constitute a pattern of racketeering activity. However, in a footnote in *Sedima, S.P.R.L. v. Imnex*, 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), the Court provided some guidance for determining what constitutes such a pattern of activity, stating that "criminal conduct forms a pattern if it embraces criminal acts that have results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Construing the decision and dicta in *Sedima*, the various Circuits have divided over the issue of whether a single scheme also may constitute a pattern of racketeering activity. *Compare Bank of America v. Touche Ross & Co.*, 782 F.2d 966, 971 (11th Cir.1986), *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir.1986), *United States v. Ianniello*, 808 F.2d 184, 193–95 (2d Cir.1986) *with Superior Oil Company v. Fulmer*, 785 F.2d 252, 257 (8th Cir.1986). District courts that have found a pattern of racketeering activity when there has been a single scheme in-

---

5. All three defendants filed motions requesting this information.

6. All three defendants filed a motion to dismiss on this basis.

clude *Rush v. Oppenheimer,* 628 F.Supp. 1188 (S.D.N.Y.1986), *United States v. Freshie Co.,* 639 F.Supp. 442 (E.D.Pa.1986), and *United States v. Yonan,* 622 F.Supp. 721 (N.D.Ill.1985). The Court of Appeals for this Circuit, however, has not addressed this issue, and this Court is thus not bound by either view.[7]

■ Upon review of the relevant authorities, and the reasoning underlying them, it is the opinion of this Court that, depending upon the facts, a single conspiracy or scheme may also constitute a pattern of racketeering activity. It is apparent, at this juncture at least, that the requisite determination must be made on a case-by-case basis after consideration of such relevant factors as (1) the number, variety and interrelation of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries. *See Sedima,* 105 S.Ct. at 3285 n. 14; *Morgan,* at 189–90.

■ Consideration of these factors leads the Court to conclude that, while defendants in this case may have engaged in a single scheme to defraud, they could also and at the same time have participated in a pattern of racketeering activity. The predicate acts in this case satisfy the "pattern" element inasmuch as they arise out of twenty-three distinct real estate transactions, each transaction involving the same or substantially similar predicate acts as the others and occurring over a span of approximately five years. While the government and defendants appear to agree that a single scheme to defraud is being charged, there are allegedly many

victims of defendants' acts: the Department of Housing and Urban Development, the Federal Housing Administration, the Veterans' Administration, and, not least, the twenty-three buyers in the real estate transactions that are the subject of the indictment. Finally, each real estate transaction, involving numerous predicate acts, caused the infliction of a new injury on the particular victim.[8]

Contrary to defendants' contentions, it is not illogical to charge and, depending upon the evidence, to find both a single agreement or conspiracy fraudulently to secure FHA financing, and the commission of numerous predicate acts with similar purposes and methods sufficient to constitute a pattern of racketeering activity. Since the defendants here allegedly participated in a single scheme to defraud the government and, while so doing, engaged in a variety of predicate acts over several years causing many distinct injuries, the Court concludes that both the conspiracy count and the RICO count may stand. Accordingly, the Court will deny defendants' motion to dismiss one of the two pertinent counts, and it will also deny the request to compel the prosecution to elect between the counts.

## ORDER

For the reasons stated in the Memorandum being issued contemporaneously herewith, it is this 16th day of January, 1987

ORDERED that defendants' motion to dismiss for vagueness be and it is hereby denied; and it is further

ORDERED that defendants' motion for a bill of particulars be and it is hereby grant-

---

7. Defendants cite Judge Flannery's opinion in *District Telecommunications Development Corp. v. District Cablevision, Inc.,* 638 F.Supp. 418, 421 (D.D.C.1985), to support the proposition that a single scheme does not establish a "pattern of racketeering activity." *District Cablevision,* however, is factually distinct from the instant case. In that case, a plaintiff brought a civil RICO action based upon its competitor's false representations made in order to be awarded a construction contract for cable television. The court held that this single scheme to defraud the

District of Columbia was not sufficient to sustain a RICO charge, even though the scheme involved a series of illegal acts. In contrast, defendants here were allegedly involved in fraudulently obtaining twenty-three separate real estate sales contracts.

8. This contrasts sharply with cases where a defendant undertakes a number of predicate acts, such as mailings, wiring, bribes, *for the purpose of inflicting a single injury.*

ed insofar as the indictment charges that defendants violated certain unspecified laws and regulations of the United States and denied in all other respects; and it is further

ORDERED that defendants' motion for pretrial discovery be and it is hereby granted with respect to defendants' request for pretrial discovery of nonwitness co-conspirators' statements, but only to the extent that such statements would be discoverable under Fed.R.Crim.P. 16 if made by defendant and with respect to defendants' motion for pretrial discovery of the government's witness list, and defendants' motion is denied in all other respects; and it is further

ORDERED that defendant Friedman's motion to modify the November 5, 1986 restraining order to permit that defendant to use $26,250 identified in that order as representing the return of a purchase deposit paid on real property for the payment of reasonable and ordinary living expenses be and it is hereby granted, and the order is hereby modified accordingly; and it is further

ORDERED that defendant Friedman's motion to modify the November 5, 1986 restraining order to permit him to expend funds from his Standard Federal Savings & Loan Account No. 0041400182 identified in subparagraph (d)(x) of said order, to the extent necessary for payment of federal and Maryland income taxes due January 1987, be and it is hereby granted, and the order is hereby modified accordingly; and it is further

ORDERED that the government's request for a stay of the order modifying the temporary restraining order be and it is hereby denied; and it is further

ORDERED that defendants' request for information concerning surveillance, mail cover, unauthorized persons in the grand jury and unrecorded grand jury testimony be and it is hereby denied; and it is further

ORDERED that defendants' motion to dismiss Count Two or, in the alternative, Count One, or, further in the alternative, to

compel election of counts, be and it is hereby denied.