**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-4751**

_____

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

CHARLES A. DAVIS,

                    Defendant - Appellant.

_____

Appeal from the United States District Court for the Western
District of North Carolina, at Statesville.   Richard L.
Voorhees, District Judge.  (5:11-cr-00032-RLV-DSC-1)

_____

Submitted:  August 21, 2013          Decided:  September 25, 2013

_____

Before TRAXLER, Chief Judge, and KING and SHEDD, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

Jeffrey M. Brandt, ROBINSON & BRANDT, P.S.C., Covington,
Kentucky, for Appellant.  Anne M. Tompkins, United States
Attorney, Charlotte, North Carolina; Kathryn Keneally, Assistant
Attorney General, Frank P. Cihlar, Criminal Appeals & Tax
Enforcement Policy Section, Gregory Victor Davis, Thomas J.
Sawyer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.,
for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Charles Davis was convicted of willfully filing false federal income tax returns from 1996 through 2000 and from 2004 through 2008, see 26 U.S.C. § 7206(1), and obstructing the administration of federal tax laws, see 26 U.S.C. § 7212(a). Davis raises various challenges to his convictions, but he does not challenge his sentence. We affirm.

From 1996 through 2008, Davis was employed by US Airways as a pilot. Each year during that period, Davis earned between $125,000 and $190,000. In 1996, Davis stopped filing income tax returns on a regular basis. He submitted to US Airways a W-4 tax form claiming "exempt" status from federal tax withholding, and US Airways essentially stopped withholding any income tax from Davis's wages. Davis also sent numerous communications to the Internal Revenue Service maintaining that he was not subject to the internal revenue laws. Davis eventually filed returns for tax years 1996 through 2000, reporting either zero or almost no income for each year.

In 2008 and 2009, Davis filed income tax returns for tax years 2004 through 2008. For each of these tax years, Davis attempted to avoid paying income tax by relying on false documents that indicated significant income tax withholdings. Such documents included 1099-OID forms that were purportedly issued by financial institutions such as Washington Mutual Bank,

2

Alaraon Trading Corp., and National Financial Services, LLC. Uncontroverted testimony at trial, however, established that no such forms were ever submitted to the IRS by these financial institutions. By 2008, the fabricated withholding figures Davis reported to the IRS had grown to a total of approximately $2,294,862.

The IRS conducted civil tax examinations of Davis and assessed tax deficiencies against him for the years 1996 through 2000. The IRS took measures to collect these deficiencies, but Davis engaged in several tactics designed to hinder the IRS's collection efforts. For example, Davis twice initiated bankruptcy proceedings, thereby halting the IRS from taking action to collect pursuant to the automatic stay provision. See 11 U.S.C. § 362. Both times, however, Davis's petition was dismissed quickly when he made no effort to advance his case or obtain relief. Additionally, Davis purported to pay his tax liabilities to the IRS with fictitious financial instruments drawn on non-existent accounts, and he also attempted to conceal funds from the IRS by using accounts opened with false tax identification numbers.

Davis was charged with ten counts of willfully filing false federal income tax returns from 1996 through 2008. See 26 U.S.C. § 7206(1). Counts one through five related to Davis's income tax returns for the years 1996-2000, and counts six

3

through ten related to the years 2004-2008. Davis was also charged with one count of corruptly endeavoring to obstruct and impede the due administration of federal tax laws based on Davis's filing of fraudulent IRS forms; filing of bankruptcy petitions "to defeat IRS levies"; submitting fraudulent documents to the IRS in satisfaction of Davis's tax deficiencies; and using false tax identification numbers to open a bank account. See 26 U.S.C. § 7212(a).

During Davis's initial appearance, the magistrate judge explained the charges against Davis and the potential penalties he faced if convicted. The magistrate judge further explained Davis's right to be represented by a lawyer and that the court would appoint counsel if Davis could not afford one. Davis told the magistrate judge that he did not want the court to appoint counsel and that he wished to represent himself. Although Davis stated that he wanted "assistance of counsel," Davis defined this term to mean clerical or administrative help with legal matters: "I'm not asking for [a lawyer] to represent me. . . . Not for [a lawyer] to represent me, but assistance. . . . I need someone to be on the outside to . . . do my research and file documents for me." J.A. 85. Davis disclosed that he had a "legal advisor" who was not a licensed attorney but who would file documents and perform other tasks Davis was unable to perform while incarcerated. Davis argued that his right to

4

"assistance of counsel" required the court to appoint his advisor as his legal representative because his advisor performed tasks that "assisted" him in conducting his own defense.

The magistrate judge denied Davis's request to have a non-lawyer act as legal counsel and then asked several questions to clarify whether Davis in fact wanted to waive his right to an attorney. Following this colloquy, the magistrate judge concluded that Davis did not actually want an attorney and wished to represent himself, and that his waiver of legal counsel was knowing and voluntary.

The magistrate judge also directed the Federal Public Defender to appoint standby counsel to answer legal questions for Davis. Subsequently, however, a conflict developed between standby counsel and Davis as to standby counsel's proper role. Davis wanted him to perform administrative tasks, but counsel refused on the basis that his appointed role was merely to make himself available to answer legal questions from Davis. The magistrate judge relieved standby counsel, and again instructed Davis that the court could only appoint a trained lawyer to represent Davis, not a layperson to provide clerical assistance and to run errands. The magistrate judge repeated that Davis could choose to represent himself with standby counsel available to answer questions or explain legal principles. Davis then

stated on the record that, "I completely, intentionally, and knowingly understand and waive an attorney." J.A. 129.

Davis filed a document purporting to grant "power of attorney" to his advisor to file legal documents on his behalf in the criminal case. Concerned that this filing cast doubt on whether Davis understood the ruling of the magistrate judge, the government requested that the district court conduct another hearing to clarify whether Davis was knowingly and voluntarily forgoing the right to counsel as required by Faretta v. California. See 422 U.S. 806, 835 (1975).

The district court granted the request for another Faretta hearing, at which the district judge thoroughly explained the charges against Davis and the criminal penalties he faced, and advised him that a "trained lawyer would defend you far better than you could defend yourself." J.A. 155. The district judge admonished Davis that it would be "unwise . . . to try to represent yourself" and that the court "would strongly urge you not to try to represent yourself." Id. The district court asked, "In light of the penalties that you face if you are found guilty and . . . the difficulties of representing yourself, do you still desire to represent yourself and give up your right to be represented by a lawyer?" Id. Davis reiterated that he did not want an attorney, and the district court concluded that

Davis had "knowingly and voluntarily waived the right to counsel." Id.

Prior to trial, the government moved in limine for an order precluding Davis in part from (1) arguing to the jury that the federal tax laws are unconstitutional or otherwise invalid; and (2) arguing that he is not subject to the internal revenue code based on any interpretation of the federal tax laws that he did not actually rely upon at the time he engaged in the charged conduct. The district court granted the motion in a written order that provided in pertinent part: "[B]ecause a lack of willfulness is a defense to counts one through ten in the indictment, Defendant may offer his interpretation of the law to the extent he actually had adopted such interpretation at the time he committed the acts charged." J.A. 190.

At trial, Davis did not actively participate. Whenever it was his turn to question or cross-examine any witnesses or otherwise participate, Davis stated: "I respectfully decline in order to reserve my rights and privileges." Davis was convicted on all eleven counts, and he received a sentence of 120 months.

On appeal, Davis first contends that his waiver of legal representation was not knowing or voluntary. A defendant has a Sixth Amendment right to defend himself in a criminal case so long as he "knowingly and intelligently" elects to do so. See Faretta, 422 U.S. at 835 (internal quotation marks omitted). A

7

defendant who asserts the right of self-representation must do so (1) clearly and unequivocally; (2) knowingly, intelligently, and voluntarily; and (3) in a timely fashion. See United States v. Frazier-El, 204 F.3d 553, 558 (4th Cir. 2000). A defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." Faretta, 422 U.S. at 835 (internal quotation marks omitted). We review a district court's determination that a defendant has waived his Sixth Amendment right to counsel de novo. See United States v. Singleton, 107 F.3d 1091, 1097 n.3 (4th Cir. 1997). The court reviews the findings of historical fact underlying the district court's determination for clear error. See United States v. Bush, 404 F.3d 263, 270 (4th Cir. 2005).

Davis argues that his waiver of the right to counsel was not knowing and intelligent because he mistakenly believed that the Sixth Amendment right to "assistance of counsel" included the right to an "assistant" regardless of whether such assistant was a lawyer. Davis argues that because he did not understand the limits of the constitutional guarantee to the "assistance of counsel," he could not have knowingly and intelligently waived such right. Throughout Davis's pre-trial proceedings, however, both the magistrate judge and the district judge court corrected Davis's misunderstanding by instructing Davis that he did not a

8

have a right to the appointment of a "person [who] is not a lawyer" but that, if appointed, standby counsel could assist with various practical tasks and would be available to answer questions.

Davis objected to the appointment of standby counsel as well as full-time legal counsel. Indeed, in each pre-trial proceeding, Davis expressly stated that he did not want an attorney. Davis, a well-educated and successful pilot for a major commercial airline, was advised in two separate hearings of the potential criminal penalties he faced and the dangers of self-representation. Nonetheless, Davis stated on multiple occasions that he did not want a lawyer and declared that he "completely, intentionally, and knowingly underst[ood] and waive[d] an attorney." We have thoroughly examined the record and, finding no clear error in the district court's determination of fact, we conclude that the district court properly held that Davis understood his right to an attorney but unequivocally, voluntarily and intelligently waived that right.

Next, Davis contends that he was denied his right to a fair trial under the Due Process Clause because the district court's ruling on the government's motion in limine had a chilling effect on his ability to pursue his trial strategy. We review the district court's ruling on a motion in limine for abuse of discretion. See United States v. Hornsby, 666 F.3d 296, 309

9

(4th Cir. 2012). This court "give[s] substantial deference to a district court's decision to exclude evidence" and will find an abuse of discretion "only if the district court acted arbitrarily or irrationally." United States v. Achiekwelu, 112 F.3d 747, 753 (4th Cir. 1997) (internal quotation marks omitted).

The district court properly limited Davis's evidence, explaining that "a defendant's views about the validity of the tax statutes are irrelevant to the issue of willfulness and need not be heard by the jury." Cheek v. United States, 498 U.S. 192, 206 (1991). The district court reasoned that "because a lack of willfulness is a defense to [the counts charging Davis with willfully filing materially false tax returns], [Davis] may offer his interpretation of the law to the extent he actually had adopted such interpretation at the time he committed the acts charged." J.A. 190. The district court made clear that "evidence may be presented as to [Davis's] actual, relied-upon understanding of tax law at the relevant times." Id.

Davis does not identify any error in the district court's ruling, and, having reviewed the record, we likewise perceive no error. Moreover, the district court's ruling clearly allowed Davis to pursue his purported trial strategy of "demonstrat[ing] that, based upon his own interpretations of [the] tax code, he had a good faith belief that his filings were accurate." Brief

10

of Appellant at 28.  The district court stated its ruling clearly and unambiguously, and Davis's professed failure to understand the district court's ruling affords him no basis for relief.

Finally, Davis contends that we should vacate his convictions and dismiss the indictment for lack of subject matter jurisdiction based on the fact that the indictment was not signed by the foreperson.  The Western District of North Carolina follows the practice of redacting the signature of the grand jury foreperson.  Davis received a copy of the redacted indictment.  He does not suggest that the indictment failed to adequately inform him of the charges, nor does he explain how the absence of the foreperson's signature prejudiced him.

Even if we assume the unredacted version of the indictment does not bear the foreperson's signature, this argument is of no avail to Davis.  It is true that under the Federal Rules of Criminal Procedure, the foreperson of a grand jury must "sign all indictments." Fed. R. Crim. P. 6(c).  But because this duty is only ministerial, the foreperson's failure to sign will not invalidate the indictment.  See Hobby v. United States, 468 U.S. 339, 345 (1984).  "[T]he absence of the foreman's signature is a mere technical irregularity that is not necessarily fatal to the indictment."  Id.  The lack of a signature has been roundly rejected as a basis for invalidating an indictment.  See, e.g.,

11

United States v. Morse, 613 F.3d 787, 793 (8th Cir. 2010);

United States v. Willaman, 437 F.3d 354, 360-61 (3d Cir. 2006);

United States v. Irorere, 228 F.3d 816, 830-31 (7th Cir. 2000).

Davis attempts to revive this losing argument by contending that the foreperson's signature is missing because the case was never actually presented to a grand jury and a grand jury never actually issued an indictment. Davis claims the government simply filed the indictment without going through the grand jury process. Davis fails to identify anything in the record suggesting that the indictment is not bona fide or that the government knowingly filed a document that is not what it purports to be. We reject this frivolous argument.

For the foregoing reasons, we affirm Davis's convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

12